Opinion of the Court, by INGALLS, J.

In The Matter of The Last Will and Testament of
NANCY ROSECRANS, Deceased.

*N. Y. Supreme Court, Third Department, General Term, May* 27, 1889.

- *Will. Fraud. Undue Influence.*—The selection by a testator of her own relatives, as the objects of her bounty, is natural and consistent, and no inference should be indulged that such selection was the result of fraud or undue influence.
2. *Same.*—Nor does the selection of a brother, in whom she had the fullest confidence, as her sole executor, indicate any fraud or undue influence in the execution of her will.

Appeal from a decree of the surrogate, confirming the probate of a last will and testament.

*T. F. Bush,* appellant.

*J. S. Van Cleef* and *T. A. Niven,* for respondent.

INGALLS, J.—We have carefully examined the evidence in this case, and are convinced that the surrogate has decided the case correctly, and the opinion which he has submitted indicates that his decision was the result of deliberate consideration. The evidence fails to show that the testatrix was induced, through fraud or undue influence, to make the will in question. We do not perceive that such will is materially at variance with the statements made by her, previous to the execution thereof, in regard to the provision which she intended to make for her grandson, Charles Porter. Doubtless she regarded him as the primary object of her bounty, and we think the provisions of the will in his favor are in entire harmony with such view. The will is as follows:

*In the name of God, amen.*
    I, Nancy Rosecrans, of the town of Neversink, Sullivan

county, and state of New York, being of the age of fifty-one years, and of sound mind and memory, do make and publish this, my last will and testament, as follows, viz.:

*First.* I give and bequeath all my estate, both real and personal, as follows:   I give all my property of every kind whatsoever to my grandson, Charles Porter, under the following conditions:

*Second.* If said Charles should die without issue, that is, without leaving children, then, and in that case, I direct and give my entire estate as follows:

One-third to my brother, David B. Smith; the balance between Anna Porter, Cornelia Hansee, Emeline Porter, sisters, and Nathaniel D. Smith and Samuel N. Smith, brothers, and Susan Fuller and Emily Porter, nieces, making seven to share alike equally.

My said estate to be managed by my executor, who is authorized to sell or lease said real estate, as his judgment may direct.

And my said executor is authorized to furnish my grandson, Charles Porter, all that may be necessary to educate, clothe and take care of him until he arrives at the age of twenty-one years, and after that, if it be necessary.

And, lastly, I do hereby nominate and appoint my brother, David B. Smith, to be my sole executor of this my last will and testament hereby revoking all former wills by me made.

In witness whereof, I have hereunto set my hand and seal, this fifth day of January, in the year of our Lord, one thousand eight hundred and eighty-eight.

NANCY ROSECRANS.   [L. S.]

The will was properly executed in all respects, in regard to form.   Construing the will in the light of the circumstances proper to be considered, we extract the following, as the scheme which the testatrix probably had in her mind, and intended to carry into effect by her will.

She purposed to provide for the support and education
of Charles Porter until he became twenty-one years of age,
when, she probably assumed, he would be able to care for
himself, and she intended that he should; but to provide
against any failure in that respect, arising from sickness,
accident or misfortune, she directed that, out of said fund,
he should receive such further assistance as should be neces-
sary to secure him a support during his natural life.    The
will provides, in that respect, as follows: "And the said
executor is authorized to furnish my grandson, Charles
Porter, all that may be necessary to educate, clothe and
take care of him until he arrives at the age of twenty-one
years, and after that if it be necessary." The will further
provides, in substance, that in case Charles Porter should
die without leaving issue him surviving, that the residue of
the fund should go to, and be divided among, the brothers,
sisters and two nieces of the testatrix, who are named in
such will, and in the proportions therein specified. By
such provisions of the will the testatrix seems to have
carried out, substantially, all that even the evidence relied
upon by the appellant would seem to indicate was her in-
tention in regard to the provision for Charles Porter, out of
her estate.

It is true that by the terms of the will the entire estate
of the testatrix has not become, directly and uncondition-
ally, vested in Charles Porter, and it seems quite evident
that she did not intend that it should so vest. For some
reason, whether well founded or otherwise, it is quite evi-
dent that she entertained an unfavorable opinion in regard
to the business capacity of Melvin Porter, the father of
Charles Porter, and as to his ability to providently manage
property, and entertaining such views, she would not be
likely to subject to his control, property designed for his
son.. In regard to the other persons named in the will, as
the objects of the bounty of the testatrix, in the event that
Charles Porter should die, leaving no issue, we do not per-

ceive but that such selection was natural, and consistent with the relationship which they bore to her, and no inference, we think, should be indulged that such selection was the result of fraud or undue influence. The testatrix derived her estate from her husband, Charles H. Rosecrans, who, by his will, as we infer from the evidence, devised and bequeathed to her his entire estate, unconditionally, subject only to the payment of a legacy of $500 to Charles Porter.

We may, therefore, assume that the testatrix was left free to dispose of her property as she saw fit, and it would seem quite natural that after properly providing for the grandchild, who was obviously an object of affection, to the grand-parents, she would next remember her own relatives in the bestowment of her bounty, and that is what she did by her will.

The foregoing considerations in regard to the manner the testatrix disposed of her estate by her will, are only material, in so far as they reflect upon the question whether such disposition was the result of fraud or undue influence. David B. Smith, a brother of the testatrix, was selected, and named in the will as the sole executor thereof. We fail to discover, in view of the facts disclosed, anything unnatural or seriously objectionable in such selection, as it is apparent that the testatrix placed in him the fullest confidence. On the 24th of October, 1886, she executed to him a power of attorney, conferring upon him authority as follows: "To transact my business in collecting debts, loaning money and looking after and doing anything that may be necessary, in his judgment, for my interest," etc. The testatrix was about fifty-two years of age when the will was executed, and we fail to discover anything which indicates, on her part, weakness of mind or a perverted judgment. Regarding the nature of the will, the relation of the parties, and the character of the duties imposed upon the executor and trustee, in reference to the management of the fund, we conclude that no substantial or sufficient reason has been

shown which should induce this court to interfere with the decision of the surrogate. The duties, which are, by the will devolved upon the executor, and which he will be required to discharge, in the character of trustee, are of such a nature that the court can be invoked at any time to prevent any abuse of the trust, and to protect the rights of Charles' Porter, should any such exercise of authority become necessary. We are satisfied that the facts of this case do not demonstrate even a well-founded suspicion, either that the will was the result of fraud or undue influence, or that the executor will prove false to the trust which has been committed to him. The decree should be affirmed, with costs in this court, to be paid out of the fund.

LEARNED, P. J., concurs. LANDON, J., I concur, but I do not think it necessary to construe the will.